**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| FLOTA PETROLERA ECUATORIANA EP<br>    Plaintiff,<br><br>v.<br><br>WILLIAM S. SUDHAUS, DAVID W.<br>SUDHAUS, ENRIQUE CADENA-MARIN,<br>JAIME CONDOY-BLACIO, DRAGUN USA<br>LLLP, MJØLNER AFRAMAX POOL CO.<br>LLC, MJØLNER SOLUTIONS CHARTERING<br>LLC, MJØLNER SHIP MANAGEMENT LLC,<br>AMAZONAS CA LLC, AMAZONAS<br>TANKERS LLC, CORE TRANSPORT LLC,<br>AND JOHN AND JANE DOES 1-10.<br><br>    Defendants. | Civil Action No. 2:26-cv-00124-GAW<br><br>Hon. Gail A. Weilheimer |

**O R D E R**

**AND NOW** this_____ day of _____, 2026, upon consideration

of Defendants William S. Sudhaus, David W. Sudhaus, Dragun USA LLLP, Amazonas CA LLC

(f/k/a Amazonas Tanker Pool Company LLC and Mjølner Aframax Pool Co. LLC), Amazonas

Tankers LLC (f/k/a Mjølner Ship Management LLC), and Core Transport LLC's (collectively, the

"Core Defendants") Motion to Compel Arbitration and Stay Proceedings, and any opposition

thereto, is hereby **ORDERED** as follows:

1.    The Core Defendants' Motion is **GRANTED**;

2.    All claims raised against any of the Core Defendants in this action are hereby

referred to arbitration, to be conducted in accordance with the terms of the

applicable Amazonas Tanker Pool Contracts entered into by Plaintiff; and

3.    The above-captioned action is **STAYED** as to the Core Defendants until the resolution of the pending arbitration proceedings.

BY THE COURT:

_____
The Honorable Gail A. Weilheimer,
U.S.D.J.

2

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

FLOTA PETROLERA ECUATORIANA EP
      Plaintiff,

v.

WILLIAM S. SUDHAUS, DAVID W.
SUDHAUS, ENRIQUE CADENA-MARIN,
JAIME CONDOY-BLACIO, DRAGUN USA
LLLP, MJØLNER AFRAMAX POOL CO.
LLC, MJØLNER SOLUTIONS CHARTERING
LLC, MJØLNER SHIP MANAGEMENT LLC,
AMAZONAS CA LLC, AMAZONAS
TANKERS LLC, CORE TRANSPORT LLC,
AND JOHN AND JANE DOES 1-10.

      Defendants.

Civil Action No. 2:26-cv-00124-GAW

Hon. Gail A. Weilheimer

## MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS

Defendants William S. Sudhaus, David W. Sudhaus, Dragun USA LLLP[1], Amazonas CA

LLC (f/k/a Amazonas Tanker Pool Company LLC and Mjølner Aframax Pool Co. LLC),

Amazonas Tankers LLC (f/k/a Mjølner Ship Management LLC), and Core Transport LLC

(collectively, the "Core Defendants"), by and through their undersigned counsel, move pursuant

to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1, *et seq*., to compel arbitration of all claims

raised against the Core Defendants in the Amended Complaint (Dkt. #19) and to stay this action

as against the Core Defendants.

For each of the reasons set forth in the accompanying Brief (which is hereby incorporated

herein as if set forth in full), the Core Defendants' Motion should be granted and an Order entered

by the Court in the form proposed.

---

[1] Dragun USA LLLP is misnamed in the Amended Complaint as "Dragun USA LLP."

Respectfully submitted,


/s/  John F. Stoviak
**SAUL EWING LLP**
John F. Stoviak (Pa. Bar No. 23471)
Margaret G. Clark (Pa. Bar No. 330376)
Ashley Campbell (Pa. Bar No. 334029)
1200 Liberty Ridge Dr., Suite 200
Wayne, PA 19087
(610) 251-5056
john.stoviak@saul.com
margaret.clark@saul.com
ashley.campbell@saul.com

**ALSTON & BIRD LLP**
Alex Yanos (admitted *pro hac vice*)
Joanna C. Hendon (admitted *pro hac vice*)
Apoorva J. Patel (Pa. Bar No. pending)
90 Park Avenue, 15th Floor
New York, NY 10016
(212) 210-9400
alex.yanos@alston.com
joanna.hendon@alston.com
apoorva.patel@alston.com
*Attorneys for Core Defendants*

Dated: February 11, 2026

2

# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

FLOTA PETROLERA ECUATORIANA EP
      Plaintiff,

v.

WILLIAM S. SUDHAUS, DAVID W.
SUDHAUS, ENRIQUE CADENA-MARIN,
JAIME CONDOY-BLACIO, DRAGUN USA
LLLP, MJØLNER AFRAMAX POOL CO.
LLC, MJØLNER SOLUTIONS CHARTERING
LLC, MJØLNER SHIP MANAGEMENT LLC,
AMAZONAS CA LLC, AMAZONAS
TANKERS LLC, CORE TRANSPORT LLC,
AND JOHN AND JANE DOES 1-10.

      Defendants.

Civil Action No. 2:26-cv-00124-GAW

Hon. Gail A. Weilheimer

## BRIEF IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS

# TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................................................1

STATEMENT OF FACTS ......................................................................................................4

    I.    The Parties' Contractual Relationship And Agreements To Arbitrate ......................4

    II.    FLOPEC's State Court Action Implicating The Parties' Contracts...........................6

    III.    The Removal Of FLOPEC's State Court Action To This Court ...............................6

    IV.    The Core Defendants' Initiation of Arbitration and Their Initial Motion to Compel Arbitration and Stay Proceedings...................................................................6

ARGUMENT............................................................................................................................8

    I.    Legal Standard ...........................................................................................................9

    II.    FLOPEC's Contracts With Amazonas Contain Agreements To Arbitrate That Fall Under The New York Convention And Panama Convention...................11

    III.    FLOPEC's Claims Against The Core Defendants Fall Squarely Within The Scope Of The Arbitration Agreements Because They "Arise In Connection With The Interpretation And Fulfillment Of" The Parties' Contracts.....................13

    IV.    FLOPEC Also May Not Evade Its Obligation To Arbitrate By Joining Non-Signatories ......................................................................................................18

    V.    FLOPEC's Challenge To The Enforceability Of The Amazonas Tanker Pool Contracts Must Be Resolved In The Arbitration .......................................21

    VI.    The Appropriate Procedural Remedy Is To Compel Arbitration And Stay The Entirety Of This Action ..................................................................................24

CONCLUSION........................................................................................................................26

57241290.1

**TABLE OF AUTHORITIES**

**Page(s)**

CASES

*36 Convent Ave. HDFC v. Fishman,*
  2004 U.S. Dist. LEXIS 8172 (S.D.N.Y. Apr. 24, 2004)...........................................................22

*Abrams v. Chesapeake Energy Corp.,*
  No. 4:16-cv-1343, 2017 U.S. Dist. LEXIS 209905 (M.D. Pa. Dec. 21, 2017) .......................16

*Acquaire v. Canada Dry Bottling,*
  906 F. Supp. 819 (E.D.N.Y. 1995) ........................................................................................14

*Altshul Stern & Co. v. Mitsui Bussan Kaisha, Ltd.,*
  385 F.2d 158 (2d Cir. 1967)....................................................................................................18

*Arthur Andersen LLP v. Carlisle,*
  556 U.S. 624 (2009)................................................................................................................19

*AT&T Mobility LLC v. Concepcion,*
  563 U.S. 333 (2011)..................................................................................................................9

*AT&T Tech., Inc. v. Commnc'ns Workers of Am.,*
  475 U.S. 643 (1986)................................................................................................................13

*AtriCure, Inc. v. Meng,*
  12 F.4th 516 (6th Cir. 2021) ...................................................................................................15

*Bannett v. Hankin,*
  331 F. Supp. 2d 354 (E.D. Pa. 2004) ......................................................................................16

*Brayman Const. Corp. v. Home Ins. Co.,*
  319 F.3d 622 (3d Cir. 2003).....................................................................................................14

*Buckeye Check Cashing, Inc. v. Cardegna,*
  546 U.S. 440 (2006)................................................................................................................21

*Buques Centroamericanos, S.A. v. Refinadora Costarricense de Petroleos, S.A.,*
  No. 87-cv-3256, 1989 U.S. Dist. LEXIS 5429 (S.D.N.Y. May 17, 1989) .............................23

*C.E. Towers Co. v. Trin. & Tobago Airways Corp.,*
  903 F. Supp. 515 (S.D.N.Y. 1995) .........................................................................................22

*Chang v. Warner Bros. Enter., Inc.,*
  No. 1:19-cv-2091, 2019 WL 5304144 (S.D.N.Y. Oct. 21, 2019)...........................................19

*Chem. Bank v. Affiliated FM Ins. Co.,*
  169 F.3d 121 (2d Cir. 1999).....................................................................................................22

*Collins & Aikman Prods. Co. v. Building Sys., Inc.*,
    58 F.3d 16 (2d Cir. 1995) .................................................................................................15

*Commodities & Minerals Enter. v. CVG Ferrominera Orinoco, C.A.*,
    49 F.4th 802 (2d Cir. 2022) ..............................................................................................22

*Desarrolladora Farallon S. de R.L. de C.V. v. Cargill Fin. Servs. Int'l*,
    666 F. App'x 17 (2d Cir. 2016) .........................................................................................16

*DiMercuio v. Sphere Drake Ins., PLC*,
    202 F.3d 71 (1st Cir. 2000) ...............................................................................................12

*Dodds v. Pulte Home Corp.*,
    909 A.2d 348 (Pa. Super. Ct. 2006) .........................................................................18, 20, 21

*FFR SE, LLC v. Sanborn*,
    No. 2:14-cv-5439, 2015 U.S. Dist. LEXIS 84467 (E.D. Pa. June 30, 2015) ......................16

*Ford v. NYLCare Health Plans of Gulf Coast, Inc.*,
    141 F.3d 243 (5th Cir. 1998) .............................................................................................15

*Friedman v. Yula*,
    679 F. Supp. 2d 617 (E.D. Pa. 2010) .................................................................................24

*Fyrnetics (H.K.) Ltd v. Quantum Group, Inc.*,
    293 F.3d 1023 (7th Cir. 2002) ...........................................................................................15

*GE Energy Power Conversion Fr. SAS, Corp. v. Outokumpu Stainless USA, LLC*,
    590 U.S. 432 (2020) ..........................................................................................................19

*In re NBR Antitrust Litig.*,
    207 F. App'x 166 (3d Cir. 2006) .......................................................................................16

*J.M. Heinike Assocs., Inc. v. Chili Lumber Co.*,
    83 A.D.2d 751 (N.Y. App. Div. 1981) ...............................................................................22

*Lamps Plus, Inc. v. Varela*,
    587 U.S. 176 (2019) ..........................................................................................................14

*Leonard v. Delaware N. Cos. Sport Serv., Inc.*,
    861 F.3d 727 (8th Cir. 2017) .............................................................................................15

*McAlister v. Sentry Ins. Co.*,
    958 F.2d 550 (3d Cir. 1992) ..............................................................................................11

*Medversant Technologies, LLC v. Leverage Health Solutions, LLC*,
    114 F. Supp. 3d 290 (E.D. Pa. 2015) ........................................................................9, 15, 18

57241290.1

*Miron v. BDO Seidman, LLP*,
   342 F. Supp. 2d 324 (E.D. Pa. 2004) ...........................................................................11, 13, 14

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
   473 U.S. 614 (1985)......................................................................................................................9

*Morelli v. Alters*,
   No. 1:19-cv-10707, 2020 U.S. Dist. LEXIS 47351 (S.D.N.Y. Mar. 18, 2020).......................18

*Neal v. ASTA Funding, Inc.*,
   No. 2:13-cv-3438, 2014 U.S. Dist. LEXIS 64349 (D.N.J. Jan. 6, 2014)..................................25

*Noye v. Johnson & Johnson Servs., Inc.*,
   765 F. App'x 742 (3d Cir. 2019) ...............................................................................................20

*PacifiCare Health Sys., Inc. v. Book*,
   538 U.S. 401 (2003).....................................................................................................................17

*Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
   7 F.3d 1110 (3d Cir. 1993)..........................................................................................................21

*Provenzano v. Ohio Valley Gen. Hosp.*,
   121 A.3d 1085, 1096 (Pa. Super. Ct. 2015)................................................................................14

*Ragone v. Atl. Video*,
   595 F.3d 115 (2d Cir. 2010).........................................................................................................19

*Seltzer v. Klein*,
   No. 88-6737, 1989 U.S. Dist. LEXIS 4270 (E.D. Pa. Apr. 20, 1989) .......................................21

*Seus v. John Nuveen & Co., Inc.*,
   146 F.3d 175 (3d Cir. 1998).........................................................................................................24

*Steel Corp. of the Phil. v. Int'l Steel Servs.*,
   2008 U.S. Dist. LEXIS 8787 (W.D. Pa. Feb. 6, 2008) ..............................................................25

*Sugartown Pediatrics, LLC v. Merck Sharp & Dohme Corp.*,
   30 F.4th 148 (3d Cir. 2022) .........................................................................................................14

*Tecnimont S.p.A. v. Holtec Int'l*,
   No. 1:17-cv-5167, 2018 U.S. Dist. LEXIS 136794 (D.N.J. Aug. 13, 2018) ............................15

*Telecom Italia, SpA v. Wholesale Telecom Corp.*,
   248 F.3d 1109 (11th Cir. 2001) ...................................................................................................15

*Telenor Mobile Commc'ns. v. Storm LLC*,
   524 F. Supp. 2d 332 (S.D.N.Y. Nov. 2, 2007)............................................................................23

57241290.1

*U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co., Ltd.*,
241 F.3d 135 (2d Cir. 2001)..............................................................................................12

*Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer*,
515 U.S. 528 (1995)..........................................................................................................17

TREATIES AND STATUTES

Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10,
1958 ("New York Convention"), 21 U.S.T. 2517 ...........................................................10, 13

Federal Arbitration Act, 9 U.S.C. §§ 1, *et seq*. ...................................................................... passim

Inter-American Convention on International Arbitration of January 30, 1975 ("Panama
Convention"), 1438 U.N.T.S. 24 .......................................................................................10

OTHER AUTHORITIES

*Contracting States,* New York Arbitration Convention,
http://www.newyorkconvention.org/countries ....................................................................12

Gary B. Born, INTERNATIONAL COMMERCIAL ARBITRATION, § 5.03[E] (3d ed. 2021)..................23

*Inter-American Convention on International Commercial Arbitration*, U.N. Treaty
Collection, www.sice.oas.org/DISPUTE/COMARB/Intl_Conv/caicpae.asp..........................12

57241290.1

**INTRODUCTION**

Defendants William S. Sudhaus, David W. Sudhaus, Dragun USA LLLP ("Dragun"), Amazonas CA LLC ("Amazonas" and f/k/a Amazonas Tanker Pool Company LLC and Mjølner Aframax Pool Co. LLC), Amazonas Tankers LLC ("AZ Tankers" and f/k/a Mjølner Ship Management LLC), and Core Transport LLC ("Core Transport," and collectively, the "Core Defendants"), by and through their undersigned counsel, move pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1, *et seq.*, to compel arbitration of all claims raised against the Core Defendants in the Amended Complaint (Dkt. #19) and to stay this action as against the Core Defendants.[1]

Plaintiff Flota Petrolera Ecuatoriana EP ("FLOPEC") is Ecuador's State-owned entity responsible for maritime oil transport. Beginning in late 2020, FLOPEC executed a series of contracts with Amazonas regarding the shipment of Ecuadorian oil via a particular size of vessel, known as an Aframax vessel. **In these contracts, FLOPEC expressly committed to submit "any dispute" that arises "in connection with the interpretation and fulfillment of" the parties' contracts to arbitration in New York under the rules of the Society of Maritime Arbitrators.**

In 2024, already in material breach of the parties' contracts, FLOPEC improperly sought to terminate them by invoking the six-month notice provisions in those contracts and withdrawing its vessels from use under the contracts. In response, Amazonas notified FLOPEC that Amazonas and Core Transport had substantial breach of contract claims for more than $200 million in damages, and that those claims were subject to arbitration. Seeking to circumvent the parties' agreed—and mandatory—arbitral dispute resolution forum, FLOPEC initiated the underlying lawsuit in the Court of Common Pleas in Chester County, Pennsylvania. FLOPEC alleges that it

---

[1] Dragun USA LLLP is misnamed in the Amended Complaint as "Dragun USA LLP."

57241290.1

has been damaged because the parties' contracts—which FLOPEC repeatedly renewed and extended under numerous chief executives, and which produced earnings of over $375 million to FLOPEC over a four-year period—were purportedly illegal under Ecuadorian law.

The parties' contracts are expressly governed by New York, not Ecuadorian, law. Further, the illegality FLOPEC alleges is that its own chief executives lacked authority to enter into those contracts. There is no suggestion that those executives ever disclosed such purported illegality to the Core Defendants. In short, FLOPEC alleges that it effectively defrauded the Core Defendants and it incredibly wants the victim of its self-confessed alleged fraud to pay it damages—in connection with contracts pursuant to which FLOPEC delivered more than 300 million barrels of oil for transport by the Core Defendants to customers of FLOPEC around the world and from which FLOPEC earned record profits. But since FLOPEC's claims all touch on "*the interpretation and fulfillment of*" the parties' contracts, they are all issues for the arbitration.

The Core Defendants removed FLOPEC's state court action to this Court pursuant to Section 205 of the FAA (9 U.S.C. § 205), which applies "[w]here the subject matter of an action or proceeding pending in a State court relates to an arbitration agreement or award falling under the [New York or Panama] Convention"—two multilateral treaties on international arbitration to which the United States and Ecuador are Contracting States, which are implemented in U.S. federal law through Chapters 2 and 3 of the FAA, respectively. (*See* Dkt. #1, ¶¶ 14-24). The Core Defendants simultaneously moved to compel arbitration and stay these proceedings. (Dkt. #2).

In response, FLOPEC filed its Amended Complaint. The Amended Complaint reflects FLOPEC's implicit concession that "the subject matter of" its action "relates to an arbitration agreement … falling under" these Conventions (*see* Dkt. #19, ¶ 29) and, therefore, this Court has jurisdiction under Sections 203 and 302 of the FAA, 9 U.S.C. §§ 203, 302, which grant federal

- 2 -

district courts original jurisdiction over "[a]n action or proceeding falling under the Convention." Indeed, in filing an Amended Complaint before this Court following the removal of this action, FLOPEC has added a new cause of action—seeking "a declaration that the claims asserted herein are not subject to arbitration" (Dkt. #19, ¶ 145)—that explicitly concerns the parties' arbitration agreements and therefore is premised on this Court's exercise of removal jurisdiction under the FAA, because there is no other basis for federal jurisdiction in this case.

As detailed in this brief, the Court should find that FLOPEC is bound by the broad written agreements to arbitrate in the parties' contracts. Because the issues FLOPEC raises in this action must be referred to arbitration, this action must be stayed pending arbitration under 9 U.S.C. § 3.

FLOPEC nonetheless contends in its Amended Complaint that its claims are not arbitrable because it styled them as torts, as if that were somehow enough to remove the claims from the ambit of the parties' broad arbitration agreements.[2] It is well settled that where the parties have executed a broad arbitration clause, tort claims are equally subject to that clause, so long as the claims relate to the relevant contractual relationship. Here, FLOPEC's Amended Complaint makes clear that all its alleged damages flow from the performance of the parties' contracts, because it asserts they are illegal under Ecuadorian law. Thus, although FLOPEC styles its claims as arising from tort, all of its claims depend on a ruling that the parties' contracts are illegal under Ecuadorian law—a ruling that can be made only in the parties' arbitration, where all matters concerning "*the interpretation and fulfillment of*" the contracts must be resolved—as has been confirmed by the weight of jurisprudence involving international arbitration agreements between commercial

---

[2] In its original pleading, FLOPEC strained not to acknowledge the existence of written contracts between the parties, referring instead to "arrangements" (*see, e.g.*, Dkt. #1-1 at 6-8 ¶¶ 3-9, 17 ¶ 49, 21 ¶¶ 65-66), "document[s]" (*see, e.g.*, *id.* at 6-7 ¶¶ 7-8, 11 ¶ 18, 19 ¶ 53, 22 ¶ 64), and "agreement[s]" (*see, e.g.*, *id.*, 18 ¶ 51). Only in FLOPEC's Amended Complaint—in which it asks this Court to declare its claims not arbitrable—does FLOPEC admit that these "arrangements," "documents," and "agreements" are in fact **contracts**. (*See* Dkt. #19, ¶¶ 138-40, 143).

- 3 -

57241290.1

parties. Under the Federal Arbitration Act, FLOPEC cannot plead its way out of the parties' broad arbitration clauses—especially where, as here, a cursory analysis of its allegations demonstrates that they all involve an attempt to question the legality and substance of the parties' contracts.

Thus, the Core Defendants respectfully request that the Court issue an order pursuant to the FAA *compelling* arbitration of FLOPEC's claims in accordance with the parties' arbitration agreements and *staying* this action in its entirety pending the resolution of the ongoing arbitration.

## STATEMENT OF FACTS

### I.     The Parties' Contractual Relationship And Agreements To Arbitrate

Ecuadorian law requires that all Ecuadorian hydrocarbons leaving Ecuadorian ports be transported on vessels chartered by a company majority-owned by the Ecuadorian State. FLOPEC, a company wholly owned by Ecuador, thus has a statutorily mandated monopoly on the maritime transport of Ecuadorian hydrocarbons. Amazonas, AZ Tankers, and Core Transport are members of a corporate group that has decades of experience transporting crude oil and providing logistics and operational services to oil producers, refiners, and other industry participants—including prior work with FLOPEC that led FLOPEC to decide to replace an existing, financially unproductive contract with another shipping company with new, long-term contracts with corporate members of the Core Defendants.

Beginning in late 2020, FLOPEC, Amazonas, AZ Tankers, and Core Transport entered into a series of contracts concerning the shipment of crude oil produced in Ecuador. Pursuant to the parties' contracts, AZ Tankers was responsible for managing a fleet of Aframax (mid-size) vessels, so that whenever FLOPEC or a crude oil purchaser decided to use an Aframax vessel for a particular shipment of oil cargo, a suitable vessel would be efficiently deployed for FLOPEC to charter. These contracts—consisting of a Commercial Management Agreement between AZ

57241290.1

Tankers and Amazonas; a series of vessel-specific Pool Participation Agreements ("PPAs") between Amazonas and FLOPEC and/or Core Transport; and General Terms and Conditions for the PPAs between Amazonas, Core Transport, and FLOPEC—are hereinafter collectively the "Amazonas Tanker Pool Contracts." The General Terms and Conditions and vessel-specific PPAs to which FLOPEC is a signatory are attached to the Core Defendants' Demand for Arbitration appended to FLOPEC's Amended Complaint. (Dkt. #19-1 at 24-132). The terms of the Amazonas Tanker Pool Contracts designate Amazonas, FLOPEC, AZ Tankers, and Core Transport as "Parties" to those agreements. (*see* Dkt. #19-1 at 26, 38).

FLOPEC's commercial arrangement with Amazonas, AZ Tankers, and Core Transport was structured as a "tanker pool," a typical arrangement in the global oil shipping industry and repeatedly used by FLOPEC in light of the fact that FLOPEC owns few oceangoing tankers. In a tanker pool, a foreign shipping company and FLOPEC contribute vessels that are used to transport Ecuadorian crude oil. By creating such a pool, FLOPEC gains control of sufficient ships to meet the demand for charters from purchasers of Ecuadorian crude oil and reaps profits from the charter rates FLOPEC charges the crude oil purchasers.

FLOPEC and Core Transport were denominated "Participants" in the fleet under the Amazonas Tanker Pool Contracts. They each contributed vessels to the Fleet pursuant to a series of PPAs with Amazonas that formed part of and effectuated the Amazonas Tanker Pool Contracts. FLOPEC's PPAs with Amazonas are also attached to the Core Defendants' Demand for Arbitration appended to FLOPEC's Amended Complaint. (Dkt. #19-1 at 47-132). The parties proceeded to operate under the Amazonas Tanker Pool Contracts for the better part of four years.[3]

---

[3] The Amazonas Tanker Pool Contracts produced more than $375 million in earnings for FLOPEC and over $550 million in total revenue for the Ecuadorian State.

57241290.1

The Amazonas Tanker Pool Contracts signed by FLOPEC contain substantively identical arbitration clauses, requiring "any dispute" that "arise[s] in connection with the interpretation and fulfillment of" the Amazonas Tanker Pool Contracts to be decided by arbitration in New York under the rules of the Society of Maritime Arbitrators. (Dkt. #19-1 at 31, 43, 64, 128).

In 2024, FLOPEC improperly prematurely terminated the Amazonas Tanker Pool Contracts and withdrew its vessels from the fleet. (Dkt. #19-1 at 134). The Core Defendants have challenged that termination and asserted other breaches in arbitration proceedings under the relevant contracts. (*See* Dkt. #19-1 at 2-23).

## II. FLOPEC's State Court Action Implicating The Parties' Contracts

On or about December 16, 2025, FLOPEC filed a Complaint against the Core Defendants and others in the Court of Common Pleas of Chester County, Pennsylvania (the "State Court Action"). (Dkt. #1-1). The action was centered on a "maritime 'pool' arrangement (the 'Amazonas Tanker Pool')" and the "series of documents [that] create[d] the Amazonas Tanker Pool." (*Id.* at 6 ¶ 3, 7 ¶ 7). These are obvious references to the Amazonas Tanker Pool Contracts.

## III. The Removal Of FLOPEC's State Court Action To This Court

On January 8, 2026, Amazonas and Core Transport filed a Notice of Removal Under The Federal Arbitration Act, removing FLOPEC's State Court Action to this Court pursuant to Section 205 of the FAA, which applies where "the subject matter of an action or proceeding pending in a State court relates to an arbitration agreement or award falling under the Convention." 9 U.S.C. § 205; (*see also* Dkt. #1).

## IV. The Core Defendants' Initiation of Arbitration and Their Initial Motion to Compel Arbitration and Stay Proceedings

Also on January 8, 2026, Amazonas and Core Transport filed a Demand for Arbitration against FLOPEC, as provided for in the Amazonas Tanker Pool Contracts, under the rules of the

57241290.1

Society of Maritime Arbitrators. (Dkt. #19-1 at 2-23). The pending arbitration will determine liability with respect to all of the Core Defendants' and FLOPEC's respective claims. The arbitration will decide the validity and effectiveness of the Amazonas Tanker Pool Contracts, including any questions concerning the relationship of those New York law contracts to any applicable provisions of Ecuadorian law; the parties' respective rights and obligations under the contracts; and the parties' fulfillment (or not) of their respective duties under the contracts. The issues to be resolved in the pending arbitration between the Core Defendants and FLOPEC thus encompass all of FLOPEC's claims against the Core Defendants in its Amended Complaint. If the arbitration panel rules that the parties' contracts are enforceable, all of FLOPEC's claims in this action will be rendered moot because they rest on the premise that the contracts are invalid.

On the same day, after serving the Demand for Arbitration on FLOPEC, the Core Defendants moved this Court to stay the judicial action pending resolution of the arbitration. (*See* Dkt. #2). In that motion, as in the present motion, the basis for the Core Defendants' stay application was Section 3 of Chapter 1 of the FAA, which provides that, if a court is "satisfied that [an] issue involved in [a] suit or proceeding is referable to arbitration under [a written arbitration] agreement," the court "shall … stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. Chapters 2 and 3 of the FAA—which govern because this dispute is subject to two multilateral treaties on international arbitration—also authorize courts to "direct that arbitration be held in accordance with the agreement at any place therein provided for, whether that place is within or without the United States." 9 U.S.C. §§ 206, 303(a).

On January 28, 2026, FLOPEC filed an Amended Complaint before this Court. (Dkt. #19). On February 5, 2026, the Core Defendants and FLOPEC entered into a stipulation regarding

57241290.1

motion practice following the Amended Complaint (Dkt. #25), which the Court approved the next day (Dkt. #28). Because the Amended Complaint mooted the Core Defendants' initial motion, the Core Defendants withdrew that motion without prejudice so as to file the instant motion, which is directed at the Amended Complaint. (*See* Dkt. #26).

## ARGUMENT

The Amazonas Tanker Pool Contracts entered into by FLOPEC, Amazonas, and Core Transport require that all claims raised in the Amended Complaint against the Core Defendants be resolved through arbitration because they concern disputes that "arise in connection with the interpretation and fulfillment of" the Amazonas Tanker Pool Contracts. As a result, the Federal Arbitration Act requires that this Court stay this action and compel arbitration for the reasons summarized below and explained in more detail in the sections that follow.

FLOPEC's Amended Complaint itself demonstrates that the present dispute is inextricably intertwined with questions concerning "the interpretation and fulfillment of" the Amazonas Tanker Pool Contracts. FLOPEC does not challenge the propriety of removal of this action to federal court under Section 205 of the FAA or the existence of federal jurisdiction under Section 203—instead, the Amended Complaint's jurisdictional allegation cites the Core Defendants' invocation of these statutory provisions. (Dkt. #19, ¶ 29). Moreover, the Amended Complaint adds, in Count IX, a claim for declaratory relief regarding the enforceability and scope of the arbitration clauses in the Amazonas Tanker Pool Contracts, which self-evidently "relates to an arbitration agreement." *See* 9 U.S.C. § 205. FLOPEC also does not dispute that the Amazonas Tanker Pool Contracts fall under the New York Convention and Panama Convention for purposes of federal subject matter jurisdiction under the FAA. *See id.* §§ 203, 302. Indeed, by affirmatively filing an Amended Complaint before this Court, FLOPEC has accepted that this Court has original jurisdiction under

Sections 203 and 302 of the FAA, because there is no other basis for federal jurisdiction in this case—*i.e.*, there is no complete diversity of citizenship because FLOPEC has named two Ecuadorian nationals as defendants. (*See* Dkt. #19, ¶¶ 17-18). Based on the foregoing, FLOPEC has effectively conceded all of the facts this Court needs to grant this motion.

In any event, it is clear from the face of the Amended Complaint that each of FLOPEC's claims against the Core Defendants implicates disputes concerning the "interpretation and fulfillment" of these contracts and consequently falls squarely within the broad language of the parties' agreements to arbitrate—irrespective of whether the actual claims sound in contract or in tort. Pursuant to the parties' arbitration agreements, Amazonas and Core Transport initiated an arbitration against FLOPEC in New York under the rules of the Society of Maritime Arbitrators, which will dispose of all the issues in dispute.

As a result, this Court should stay the entirety of this action pending the resolution of the arbitration brought by Amazonas and Core Transport against FLOPEC. That arbitration will not only determine Amazonas' and Core Transport's claims for breaches of contract but also will resolve all of the issues underlying FLOPEC's claims in its Amended Complaint. A stay therefore is not only mandated under Section 3 of the FAA but also avoids wasting judicial resources and the possibility of inconsistent rulings on the same issues.

## I.    Legal Standard

"The Supreme Court has declared there to be a 'liberal federal policy favoring arbitration.'" *Medversant Technologies, LLC v. Leverage Health Solutions, LLC*, 114 F. Supp. 3d 290, 295 (E.D. Pa. 2015) (quoting *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011)). And this "emphatic federal policy in favor of arbitral dispute resolution . . . applies with special

57241290.1

force in the field of international commerce." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631 (1985).

The present dispute is subject to two multilateral treaties on international arbitration to which the United States and Ecuador are signatories: the Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958 (the "New York Convention"), 21 U.S.T. 2517, and the Inter-American Convention on International Arbitration of January 30, 1975 (the "Panama Convention"), 1438 U.N.T.S. 24. Both of these treaties are incorporated in U.S. federal law through the FAA. Chapter 2 of the FAA implements the New York Convention. 9 U.S.C. § 201. Chapter 3 of the FAA implements the Panama Convention, incorporates by reference the relevant provisions of Chapter 2, and incorporates Chapter 1 of the FAA to the extent it is not in conflict with the Panama Convention. 9 U.S.C. §§ 301, 302, 307.

Article II(3) of the New York Convention provides that "[t]he court of a Contracting State, when seized of an action in a matter in respect of which the parties have made an arbitration agreement within the meaning of this article, shall, at the request of one of the parties, refer the parties to arbitration unless it finds that the said agreement is null and void, inoperative, or incapable of being performed." 21 U.S.T. 2517, Art. II(3). As a result, compelling arbitration here is mandated by federal law and necessary to comport with the treaty obligations of the United States.

The FAA requires a court to give effect to agreements to arbitrate through an order to compel arbitration and to stay litigation. Section 3 of the FAA provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration

- 10 -

57241290.1

has been had in accordance with the terms of the agreement, providing the applicant
for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3. Further, Chapters 2 and 3 of the FAA authorize courts to "direct that arbitration be held in accordance with the agreement at any place therein provided for, whether that place is within or without the United States." 9 U.S.C. §§ 206, 303(a).

A court "must compel arbitration if it finds (1) that a valid arbitration agreement exists between the parties, and (2) that the dispute before it falls within the scope of this agreement." *Miron v. BDO Seidman, LLP*, 342 F. Supp. 2d 324, 238 (E.D. Pa. 2004) (citing *McAlister v. Sentry Ins. Co.,* 958 F.2d 550, 553 (3d Cir. 1992)). As detailed below, this Court should find that the parties' contracts contain binding arbitration agreements and therefore refer the parties to arbitration.

## II.  FLOPEC's Contracts With Amazonas Contain Agreements To Arbitrate That Fall Under The New York Convention And Panama Convention

The arbitration agreements in each of the Amazonas Tanker Pool Contracts are governed by the New York Convention and the Panama Convention, under the meaning of the FAA. In particular, the Conventions apply to any arbitration agreement in which both parties are from States that signed the applicable Convention and the contract is not considered as "domestic." *See* 9 U.S.C. § 202; *id.* § 302.  Here, each agreement was concluded between Amazonas, whose principal place of business is in the United States (a signatory to both Conventions), and FLOPEC, an entity incorporated in Ecuador and owned by the Ecuadorian State (also a signatory to both Conventions).[4] At the same time, performance under the Amazonas Tanker Pool Contracts

---

[4] Amazonas is domiciled in the Marshall Islands, which is also a signatory to the New York Convention. Lists of the Contracting States to the New York Convention and Panama Convention are respectively available at: *Contracting States,* New York Arbitration Convention, http://www.newyorkconvention.org/countries; *Inter-American Convention on International Commercial Arbitration*, U.N. Treaty Collection, www.sice.oas.org/DISPUTE/COMARB/Intl_Conv/caicpae.asp.

- 11 -

57241290.1

involved commercial conduct in Ecuador and other foreign countries. Therefore, the arbitration agreements in the Amazonas Tanker Pool Contracts are considered not to be "domestic" and fall under the New York Convention and the Panama Convention. *See* 9 U.S.C. §§ 202, 302.

For purposes of the FAA, the New York Convention, and the Panama Convention, an agreement to arbitrate exists if: "(1) there is a written agreement; (2) the writing provides for arbitration in the territory of a signatory of the convention; (3) the subject matter is commercial; and (4) the subject matter is not entirely domestic in scope." *U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co., Ltd.*, 241 F.3d 135, 146 (2d Cir. 2001); *see also DiMercuio v. Sphere Drake Ins.,* PLC, 202 F.3d 71, 74 n.2 (1st Cir. 2000) (same); 9 U.S.C. §§ 202, 302. All four of these requirements are satisfied here.

Indeed, FLOPEC does not dispute that this action relates to an arbitration agreement falling under the Conventions, because it has not contested removal under Section 205 or federal subject matter jurisdiction under Section 203 of the FAA and, further, has filed an Amended Complaint premised on federal jurisdiction. Section 205 of the FAA provides for removal "[w]here the subject matter of an action or proceeding pending in a State court relates to an arbitration agreement . . . falling under the Convention." 9 U.S.C. § 205. Additionally, "[a]n action or proceeding falling under the Convention shall be deemed to arise under the laws and treaties of the United States" for purposes of federal subject matter jurisdiction. *Id.* § 203. FLOPEC has filed an Amended Complaint that depends on federal subject matter jurisdiction, which precludes any challenge to the propriety of removal in this case or the propriety of federal subject matter jurisdiction on the basis that the State Court Action did not "relate[] to an arbitration agreement . . . falling under the Convention." (*See* Dkt. #19, ¶ 29). Further, FLOPEC's Amended Complaint adds a claim for declaratory relief regarding the enforceability and scope of the arbitration clauses in the Amazonas

- 12 -

Tanker Pool Contracts—which clearly "relates to an arbitration agreement." (*See id.*, ¶ 145 (Count IX seeks "a declaration that the claims asserted herein are not subject to arbitration")).

There thus can be no dispute that the parties' agreements to arbitrate fall under both the New York Convention and the Panama Convention. Those Conventions mandate, as set out in the New York Convention, that "[t]he court of a Contracting State, when seized of an action in a matter in respect of which the parties have made an arbitration agreement within the meaning of this article, ***shall***, at the request of one of the parties, ***refer the parties to arbitration*** unless it finds that the said [arbitration] agreement is null and void, inoperative, or incapable of being performed." 21 U.S.T. 2517, Art. II(3) (emphasis added). Consequently, federal law and international law require the arbitration of FLOPEC's claims, *see* 9 U.S.C. §§ 203, 206, 302, 303, and for this matter to be stayed pending arbitration, *see* 9 U.S.C. § 3.

Sections III through V below address certain arguments suggested in FLOPEC's Amended Complaint, all of which are for the arbitration panel to determine but none of which withstand scrutiny. Section VI below explains why this action must be stayed in its entirety pending the resolution of the parties' pending arbitration.

### III.    FLOPEC's Claims Against The Core Defendants Fall Squarely Within The Scope Of The Arbitration Agreements Because They "Arise In Connection With The Interpretation And Fulfillment Of" The Parties' Contracts

Where a contract contains an arbitration clause, "[t]he Supreme Court has held that a presumption of arbitrability exists . . . and that an order to arbitrate should not be denied 'unless it may be said with positive assurance that the arbitration clause is not susceptible to an interpretation that covers the asserted dispute.'" *Miron*, 342 F. Supp. 2d at 328 (quoting *AT&T Tech., Inc. v. Commnc'ns Workers of Am.*, 475 U.S. 643, 650 (1986)). While state contract law governs the scope of agreements, "the FAA provides the default rule for resolving certain ambiguities in

- 13 -

arbitration agreements," including that any "ambiguities about the scope of an arbitration agreement must be resolved in favor of arbitration." *Lamps Plus, Inc. v. Varela*, 587 U.S. 176, 189 (2019); *see also Brayman Const. Corp. v. Home Ins. Co.*, 319 F.3d 622, 625 (3d Cir. 2003).

Pursuant to the Amazonas Tanker Pool Contracts, FLOPEC is required to arbitrate "[i]f any dispute should arise in connection with the interpretation and fulfillment of" the relevant agreements. (*See* Dkt. #19-1 at 31, 43, 64, 128). Courts routinely recognize that such arbitration agreements are "broad" in scope because they are "unrestricted, contain[] language that encompasses all disputes which relate to contractual obligations, and generally include[] all claims arising from the contract regardless of whether the claim sounds in tort or contract." *Provenzano v. Ohio Valley Gen. Hosp.*, 121 A.3d 1085, 1096 (Pa. Super. Ct. 2015) (quotation marks omitted). Indeed, several courts have affirmed the breadth of the language found in the present arbitration agreements. *See, e.g.*, *Sugartown Pediatrics, LLC v. Merck Sharp & Dohme Corp.*, 30 F.4th 148, 158-59 (3d Cir. 2022); *Miron*, 342 F. Supp. 2d at 330; *Acquaire v. Canada Dry Bottling*, 906 F. Supp. 819, 835 (E.D.N.Y. 1995).

In the present action, FLOPEC asserts eight claims against the Core Defendants, each of which concerns disputes that "arise in connection with the interpretation and fulfillment" of the Amazonas Tanker Pool Contracts, irrespective of whether the Court were to find that such claims sound in contract or tort. Indeed, the very existence of these contracts is the factual predicate to each of FLOPEC's claims.

FLOPEC avers that its claims "are not based on breach of contract" (Dkt. #19, ¶ 140), but that is of no relevance to the instant motion. It is well established in FAA jurisprudence that arbitration agreements such as the broad clauses here are not limited to claims for breaches of contract but also encompass other contract-related and non-contractual claims. *Medversant*, 114

- 14 -

F. Supp. 3d. at 297 (fraud, tortious interference, and civil conspiracy claims fell within scope of arbitration clause covering disputes "with respect to the performance of this agreement"); *see also AtriCure, Inc. v. Meng*, 12 F.4th 516, 523 (6th Cir. 2021); *Leonard v. Delaware N. Cos. Sport Serv., Inc.*, 861 F.3d 727, 730 (8th Cir. 2017); *Telecom Italia, SpA v. Wholesale Telecom Corp.*, 248 F.3d 1109, 1114 (11th Cir. 2001); *Fyrnetics (H.K.) Ltd v. Quantum Group, Inc.*, 293 F.3d 1023, 1030 (7th Cir. 2002); *Ford v. NYLCare Health Plans of Gulf Coast, Inc.*, 141 F.3d 243, 250-51 (5th Cir. 1998); *Collins & Aikman Prods. Co. v. Building Sys., Inc.*, 58 F.3d 16, 22 (2d Cir. 1995).

In addition, even a cursory review of the allegations in FLOPEC's Amended Complaint makes plain that its causes of action against the Core Defendants all "arise in connection with the interpretation and fulfillment of" the relevant contracts:

In **Count I**, FLOPEC alleges tortious interference with business relations stemming from the "structure" and effect of the Amazonas Tanker Pool Contracts, including how those agreements provided for the operation of the Tanker Pool and restrictions the agreements placed on FLOPEC. (Dkt. #19, ¶¶ 84, 92). Such a dispute requires a finder of fact to determine the enforceability, content and scope of the Amazonas Tanker Pool Contracts and who is or is not a "stranger" to those contracts. *See, e.g.*, *Tecnimont S.p.A. v. Holtec Int'l*, No. 1:17-cv-5167, 2018 U.S. Dist. LEXIS 136794, at *10-18 (D.N.J. Aug. 13, 2018).

Similarly, **Counts III through V** each describe disputes concerning the interpretation and fulfillment of the Amazonas Tanker Pool Contracts because they allege breaches of duties arising from those agreements.[5] In particular, **Count III** involves allegations of aiding and abetting breach

---

[5] Count II of FLOPEC's Amended Complaint is a breach of fiduciary duty claim against an Ecuadorian national who is not a Core Defendant.

57241290.1

of fiduciary duty relating to the "design[]" of the Tanker Pool agreements and the "manag[ement]" and distribution of revenue under those agreements. (*See* Dkt. #19, ¶ 99). Similarly, **Count IV** alleges breach of fiduciary duties created as a result of "a joint venture known as the Amazonas Tanker Pool" created by the parties' contracts—including vessel use, revenue distribution, and maintenance of documents (*id.* ¶¶ 102, 106-08).[6] Courts routinely require arbitration of claims alleging breaches of fiduciary duties where the source of those duties relates to the underlying contract. *See, e.g.*, *In re NBR Antitrust Litig.*, 207 F. App'x 166, 173 (3d Cir. 2006). **Count V** seeks an accounting based on similar duties stemming from the Amazonas Tanker Pool Contracts (Dkt. 19, ¶¶ 111-14)—notwithstanding that the contracts disclaim such duties and the fact that, under the applicable contracts, all relevant documentation was already in FLOPEC's possession, custody and control. (Dkt. #19-1 at 29, 41); *see, e.g.*, *Desarrolladora Farallon S. de R.L. de C.V. v. Cargill Fin. Servs. Int'l*, 666 F. App'x 17, 23 n.6 (2d Cir. 2016).

In **Count VI**, FLOPEC raises a claim for unjust enrichment concerning the parties' duties and obligations under Amazonas Tanker Pool Contracts, including revenue distribution and the extent of benefits obtained by the Core Defendants under those agreements. (Dkt. #19, ¶ 117); *see, e.g.*, *Bannett v. Hankin*, 331 F. Supp. 2d 354, 361 n.8 (E.D. Pa. 2004); *FFR SE, LLC v. Sanborn*, No. 2:14-cv-5439, 2015 U.S. Dist. LEXIS 84467, at *37 (E.D. Pa. June 30, 2015).

In **Count VII**, FLOPEC alleges civil conspiracy concerning "the creation and operation of the Amazonas Tanker Pool and related agreements" and the "designing and implementing" of the Amazonas Tanker Pool Contracts, which necessarily entails the interpretation and fulfillment of those agreements. (Dkt. #19, ¶ 121-22); *see, e.g.*, *Abrams v. Chesapeake Energy Corp.*, No. 4:16-

---

[6] Ironically, the Amazonas Tanker Pool Contracts expressly disclaim the creation of any type of partnership or fiduciary relationship. (Dkt. #19-1 at 32, 43, 65, 129). This further highlights the necessity of referring this matter to arbitration.

57241290.1

cv-1343, 2017 U.S. Dist. LEXIS 209905, at *36 (M.D. Pa. Dec. 21, 2017) (compelling arbitration of civil conspiracy claim where wrongful conduct concerned performance of the underlying contract). FLOPEC's claim is that the contracts violate Ecuadorian law; there is no claim that they violate New York law, which expressly governs.

Moreover, any ambiguity as to whether a civil conspiracy claim falls within the scope of the arbitration clauses should be resolved in favor of compelling arbitration. As the Supreme Court held in a case involving the question of whether certain limiting language in arbitration clauses permitted the arbitration of RICO claims:

> *Vimar* instructs that we should not, on the basis of 'mere speculation' that an arbitrator might interpret these ambiguous agreements in a manner that casts their enforceability into doubt, take upon ourselves the authority to decide the antecedent question of how the ambiguity is to be resolved. In short, since we do not know how the arbitrator will construe the remedial limitations, the questions whether they render the parties' agreements unenforceable and whether it is for courts or arbitrators to decide enforceability in the first instance are unusually abstract. As in *Vimar,* the proper course is to compel arbitration.

*PacifiCare Health Sys., Inc. v. Book*, 538 U.S. 401, 406-07 (2003) (citing *Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer,* 515 U.S. 528, 541 (1995)).

In **Count VIII**, FLOPEC alleges that "the Amazonas Tanker Pool arrangement violated Ecuadorian statutes and laws in several material ways," including by the Core Defendants' alleged conduct in "facilitating," "designing," and "implementing" the Amazonas Tanker Pool Contracts. (Dkt. #19, ¶¶ 131-33). These allegations, too, require the interpretation of the Amazonas Tanker Pool Contracts and assessment of the parties' performance or fulfilment of those agreements.

Finally, in **Count IX**, FLOPEC seeks a declaratory judgment regarding the arbitrability of the above claims pursuant to the Amazonas Tanker Pool Contracts. (*Id.*, ¶ 145). Because this claim directly concerns the arbitration clauses found within those contracts, it, too, is a "dispute [that] arise[s] in connection with the interpretation and fulfillment" of those agreements. *See, e.g.,*

- 17 -

*Morelli v. Alters*, No. 1:19-cv-10707, 2020 U.S. Dist. LEXIS 47351, at *24 (S.D.N.Y. Mar. 18, 2020) (finding agreement to arbitrate "any dispute" "plainly covers . . . declaratory judgment claims").

It bears emphasis that, although the Amended Complaint is pled under the guise of claims sounding in tort, the facts underpinning FLOPEC's claims and the substance of its allegations reveal central disputes relating to the interpretation and fulfillment of the parties' contracts. To be clear, FLOPEC cannot evade the broad scope of the arbitration agreements it entered into merely by attempting to recast plain contractual disputes as torts. "The parties to an agreement cannot attempt to defeat an arbitration clause simply by adding fraud allegations to what is essentially a contract claim" or where "[t]he gist of th[e] actions is in contract." *Dodds v. Pulte Home Corp.*, 909 A.2d 348, 350 (Pa. Super. Ct. 2006); *see also Medversant*, 114 F. Supp. 3d. at 297 ("[A] court looks not to the labels or legal theories attached to the claims . . . but rather it must focus on the factual underpinnings of the claim.") (quotation marks omitted); *Altshul Stern & Co. v. Mitsui Bussan Kaisha, Ltd.*, 385 F.2d 158, 159 (2d Cir. 1967) ("Plaintiff cannot avoid the broad language of the arbitration clause by casting its complaint in tort.").

Consequently, each of FLOPEC's claims falls squarely within the scope of the parties' agreements to arbitrate.

## IV.  FLOPEC Also May Not Evade Its Obligation To Arbitrate By Joining Non-Signatories

FLOPEC asserts that arbitration cannot be compelled by any Defendant other than Amazonas because "Core Transport LLC and the other Defendants did not sign and are not parties to the contracts and thus cannot enforce them." (Dkt. #19, ¶¶ 139, 143). FLOPEC is incorrect. The arbitration agreements in the Amazonas Tanker Pool Contracts expressly provide for enforcement by the "Parties," defined as including FLOPEC, Amazonas, "and other persons participating in the

- 18 -

57241290.1

Pool as a 'Participant' (each, a 'Party' and collectively, the 'Parties.')" (*See* Dkt. #19-1 at 26, 31, 38, 44). Core Transport participated in the Pool as a Participant and therefore is a Party under the meaning of that term in the Amazonas Tanker Pool Contracts. FLOPEC itself describes Core Transport as "one of the Sudhaus Group entities that participated in the Amazonas Tanker Pool arrangement" (Dkt. #19, ¶ 23), and "sold most of the fuel needed to power the vessels for each voyage" (*Id.*, ¶ 57).

Even if Core Transport were not a "Party" to the Amazonas Tanker Pool Contracts, Core Transport nonetheless could compel FLOPEC to arbitrate. FLOPEC ignores the settled law allowing non-signatories to enforce arbitration agreements against signatories in a range of circumstances such as those present here. *See, e.g.*, *GE Energy Power Conversion Fr. SAS, Corp. v. Outokumpu Stainless USA, LLC*, 590 U.S. 432, 438 (2020) ("[E]quitable estoppel allows a nonsignatory to a written agreement containing an arbitration clause to compel arbitration where a signatory to the written agreement must rely on the terms of that agreement in asserting its claims against the nonsignatory.") (quotation marks omitted).

It is well-recognized that "traditional principles of state law allow a contract to be enforced by or against nonparties to the contract," including through "third-party beneficiary theories . . . and estoppel." *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009) (quotations omitted). Under New York law, applicable here, non-signatories to an arbitration agreement can enforce the agreement when "the issues the non-signatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed." *Chang v. Warner Bros. Enter., Inc.*, No. 1:19-cv-2091, 2019 WL 5304144, at *4 (S.D.N.Y. Oct. 21, 2019) (citation omitted); *see also Ragone v. Atl. Video*, 595 F.3d 115, 126-28 (2d Cir. 2010).

57241290.1

FLOPEC's own allegations affirm that there are intertwined factual issues and a close relationship between the non-signatory Core Defendants and the Core Defendants that are parties to the Amazonas Tanker Pool Contracts, and also that the non-signatories were intended to benefit from those contracts. (*See* Dkt. #19,  ¶¶ 1, 3, 7, 15-16, 19-26 (alleging a concerted "scheme" by William and David Sudhaus and "their web of affiliated" and "interconnected entities" to benefit from the Amazonas Tanker Pool Contracts)).[7] In describing the alleged conduct, FLOPEC routinely refers to the "Sudhaus Group" without distinguishing between the entities that were signatories or non-signatories to the Amazonas Tanker Pool Contracts. (*See, e.g.*, *id.*, ¶¶ 7 (alleging "[t]he Sudhaus Group deceptively engineered a series of documents to create the Amazonas Tanker Pool"), 41 (alleging that, "from 2018 to 2024, the Sudhaus Group and their co-conspirators caused the majority of crude oil produced in Ecuador to be exported through Aframax vessels")); *see also Noye v. Johnson & Johnson Servs., Inc.*, 765 F. App'x 742, 747 (3d Cir. 2019) (holding that non-signatory could compel signatory to arbitrate dispute given the obvious and close nexus between the non-signatory and signatory parties, including that the signatory plaintiff's complaint referred to the signatory and non-signatory defendants "collectively as 'Defendants,' and accuses them of the same conduct").

FLOPEC may not circumvent its obligation to arbitrate the present disputes simply by joining non-signatory affiliated individuals and entities. "An arbitration agreement would be of little value if a party could obviate the effect of the agreement merely by finding a way to join another party." *Dodds*, 909 A.2d at 352. In *Dodds*, the Court held that an arbitration agreement

---

[7] The non-signatory Core Defendants comprise two individuals—William Sudhaus, the Core Defendants' ultimate beneficial owner and controller, and his son David Sudhaus—and Dragun, which supported the signatories in the fulfillment of the Amazonas tanker pool. Another named Defendant, Mjølner Aframax Pool Co. LLC, was renamed Amazonas Tanker Pool Company LLC, which was later renamed Amazonas CA LLC (*i.e.*, a signatory). The named Defendant Mjølner Ship Management LLC was renamed Amazonas Tankers LLC (*i.e.*, another signatory).

- 20 -

between the plaintiff and a defendant could not be "defeated by adding [defendant's parent corporation] to the complaint," especially where the parent corporation "wishes to *enforce* the arbitration agreement rather than avoid it." *Id.* at 352. So, too, here. FLOPEC cannot avoid its obligation to arbitrate by joining non-signatory Core Defendants who seek arbitration and, by FLOPEC's own allegations, are interconnected with the signatory Core Defendants and whom the parties intended to benefit from the Amazonas Tanker Pool Contracts. *See Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 7 F.3d 1110 (3d Cir. 1993).

## V.    FLOPEC's Challenge To The Enforceability Of The Amazonas Tanker Pool Contracts Must Be Resolved In The Arbitration

As a threshold matter, FLOPEC's allegation that the underlying contracts are not valid or enforceable under Ecuadorian law, (Dkt. #19, ¶ 131), does not relieve FLOPEC of its obligation to arbitrate. "[A]s a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445-46 (2006). Even a claim that a contract, as a whole, was illegal or procured by fraud must be decided in arbitration. *Id.* at 449 ("[A] challenge to the validity of the contract as a whole, and not specifically to the arbitration clause, must go to the arbitrator."); *see also Seltzer v. Klein*, No. 88-6737, 1989 U.S. Dist. LEXIS 4270, at *11-12 (E.D. Pa. Apr. 20, 1989). As a result, FLOPEC's general assertion that the Amazonas Tanker Pool Contracts were allegedly violative of Ecuadorian law is not a basis for this Court to decline the instant application.

FLOPEC's sole challenge specifically directed at the arbitration clauses is an assertion that its own chief executives—the General Managers who successively signed each of the contracts—allegedly (and secretly) lacked authority under Ecuadorian law to enter into international arbitration agreements, because they needed approval of the Attorney General. (Dkt. #19, ¶ 141.) Such an allegation cannot save FLOPEC from its obligation to arbitrate that dispute.

- 21 -

57241290.1

*First*, each of the contracts contains a choice-of-law provision providing that the agreement is governed by New York law. (Dkt. #19-1 at 31, 43, 64, 128). As a result, the validity and enforceability of the contracts' arbitration clauses is governed by New York law and not Ecuadorian law. *Commodities & Minerals Enter. v. CVG Ferrominera Orinoco, C.A.*, 49 F.4th 802, 816-17 (2d Cir. 2022) (holding that Venezuelan law did not govern the validity of an arbitration clause because "[w]hether an arbitration agreement is 'valid' is governed by the laws to which the parties have subjected it. Consistent with this language, we have repeatedly held that the existence or validity of an arbitration agreement is governed by a choice-of-law clause where one exists, because choice-of-law clauses are separable when the contract's validity is otherwise disputed.") (citation modified).

Here, FLOPEC's Amended Complaint alleges that the Amazonas Tanker Pool Contracts were highly publicized in the Ecuadorian press (*see* Dkt. #19, ¶¶ 17, 69-70, 90), yet two Ecuadorian Presidents and multiple members of FLOPEC's Board took no steps to terminate these allegedly "brazenly" illegal contracts (*see id.*, ¶¶ 9, 96). Rather, they permitted the parties to continue performing under the contracts, earning hundreds of millions of dollars for FLOPEC and Ecuador, and reaffirmed and extended the contracts in January 2023. (*see id.*, ¶¶ 139, 141). As a matter of New York law, there could be no clearer proof of ratification than the actions of the Ecuadorian Presidents and FLOPEC directors. *See 36 Convent Ave. HDFC v. Fishman*, 2004 U.S. Dist. LEXIS 8172, at *14-15 (S.D.N.Y. Apr. 24, 2004) ("In addition to reasons of apparent authority, the arbitration clause is also enforceable because the principal's subsequent actions ratified the contract."); *Chem. Bank v. Affiliated FM Ins. Co.*, 169 F.3d 121, 128 (2d Cir. 1999); *C.E. Towers Co. v. Trin. & Tobago Airways Corp.*, 903 F. Supp. 515, 526 (S.D.N.Y. 1995); *J.M. Heinike Assocs., Inc. v. Chili Lumber Co.*, 83 A.D.2d 751, 752 (N.Y. App. Div. 1981).

*Second*, a foreign State-owned entity cannot avoid an international arbitration agreement by belatedly invoking its own national law. *Buques Centroamericanos, S.A. v. Refinadora Costarricense de Petroleos, S.A.*, No. 87-cv-3256, 1989 U.S. Dist. LEXIS 5429 (S.D.N.Y. May 17, 1989) (rejecting argument by state-owned entity that arbitration agreement was invalid because it lacked approval from the Costa Rican legislature to enter an agreement to arbitrate); *see also* Gary B. Born, INTERNATIONAL COMMERCIAL ARBITRATION, § 5.03[E] (3d ed. 2021) ("It is fundamentally contrary to a state's commitment to arbitrate an international dispute for the state subsequently to invoke its own legislative, constitutional, or administrative acts as prohibitions against or qualifications to its international arbitration agreement. Such efforts are irreconcilable with the state's obligations of good faith and principles of estoppel, applicable as general principles of law and required by the New York Convention.").

*Third*, FLOPEC's assertion of lack of authority completely ignores that an agent may still have apparent authority to enter arbitration agreements and bind its principal under New York law. *See Telenor Mobile Commc'ns. v. Storm LLC*, 524 F. Supp. 2d 332, 354-55 (S.D.N.Y. Nov. 2, 2007) (finding New York, not Ukrainian, law was controlling, and that an agent had apparent authority to bind a principal to an arbitration agreement). Consequently, even if FLOPEC were correct that its General Managers who signed the Amazonas Tanker Pool Contracts on behalf of FLOPEC lacked actual authority to enter into arbitration agreements under Ecuadorian law (which is denied), FLOPEC overlooks that those individuals were chief executives who at least had apparent authority to do so. (*See* Dkt. 19, ¶ 141; *see also id.*, ¶¶ 8 (noting "Condoy-Blacio was appointed [as FLOPEC's General Manager] by a former Minister of Energy"), 73 (alleging "then-President Guillermo Lasso['s] involvement with the Amazonas Tanker Pool "and the government's handling of it")).

- 23 -

57241290.1

Finally, the failure of FLOPEC's chief executives to advise the Core Defendants of their alleged lack of authority to enter into international arbitration agreements, if true, may constitute fraud—but it would be a fraud by FLOPEC against the Core Defendants, and certainly would not relieve FLOPEC of its obligation to arbitrate the claims asserted in the Amended Complaint.

**VI.    The Appropriate Procedural Remedy Is To Compel Arbitration And Stay The Entirety Of This Action**

Because FLOPEC is bound to arbitrate its present claims, this Court should issue an order compelling arbitration. In addition, because *each* of FLOPEC's claims against the Core Defendants is subject to the parties' arbitration agreements, this Court should stay this action and has discretion to dismiss the Amended Complaint as to the Core Defendants. *See Friedman v. Yula*, 679 F. Supp. 2d 617, 629 (E.D. Pa. 2010); *Seus v. John Nuveen & Co., Inc.*, 146 F.3d 175, 179 (3d Cir. 1998).

On January 8, 2026, Amazonas and Core Transport commenced an arbitration proceeding against FLOPEC under the rules of the Society of Maritime Arbitrators that will determine, among other matters, the validity and effectiveness of the Amazonas Tanker Pool Contracts, including their relationship to any applicable provisions of Ecuadorian law; the parties' respective rights and obligations under those contracts; and the parties' fulfillment (or not) of their respective duties under the contracts. (*See* Dkt. #19-1 at 2-23). The issues to be resolved in the pending arbitration between the Core Defendants and FLOPEC thus encompass FLOPEC's claims in this action.

FLOPEC's suggestion that Amazonas and Core Transport "seek to end-run this litigation," (Dkt. #19, ¶ 137) is an exercise in projection. There is no basis for FLOPEC to accuse Amazonas and Core Transport of forum shopping. FLOPEC brought this litigation, knowing Amazonas had arbitrable breach of contract claims against it, in an attempt to evade the mandatory forum agreed to by the parties in their contracts. Amazonas and Core Transport have corrected that forum

57241290.1

evasion by commencing arbitration. *See Steel Corp. of the Phil. v. Int'l Steel Servs.*, 2008 U.S. Dist. LEXIS 8787, at *16 (W.D. Pa. Feb. 6, 2008) ("SCP was entirely within its rights to commence this arbitration in Singapore, as expressly provided for in the IOSA Agreement. Choosing to utilize the forum contractually agreed upon by the parties is not forum shopping and, indeed is supported by public policy."). Nor may FLOPEC ask this Court to parse the issues in the arbitration to enjoin some but not all of the matters in dispute that Amazonas and Core Transport have submitted to arbitration.

A stay is also necessary for reasons of judicial economy. Section 3 of the FAA, in addition to reflecting the FAA's overarching objective of codifying federal policy in favor of arbitration, requires a stay to conserve precious judicial resources. *See Neal v. ASTA Funding, Inc.*, No. 2:13-cv-3438, 2014 U.S. Dist. LEXIS 64349, at *14 (D.N.J. Jan. 6, 2014) ("A stay serves the interests of judicial efficiency and the broad federal policy in favor of free arbitration of the disputes that are current before the Arbitrator. Under Section 3 of the FAA and this Court's broader discretionary powers, this action will be stayed pending the outcome of arbitration.").

Given the identical issues and overlapping parties, the Core Defendants respectfully request that the Court stay the entirety of this action until resolution of the pending arbitration.

57241290.1

**CONCLUSION**

For the reasons detailed above, the Core Defendants respectfully request that this Court enter an order compelling arbitration of all claims raised against the Core Defendants and staying this action as to the Core Defendants until the resolution of the pending arbitration. The Core Defendants further respectfully request oral argument on this motion.

Respectfully submitted,

*/s/ John F. Stoviak*
**SAUL EWING LLP**
John F. Stoviak (Pa. Bar No. 23471)
Margaret G. Clark (Pa. Bar No. 330376)
Ashley Campbell (Pa. Bar No. 334029)
1200 Liberty Ridge Dr., Suite 200
Wayne, PA 19087
(610) 251-5056
john.stoviak@saul.com
margaret.clark@saul.com
ashley.campbell@saul.com

**ALSTON & BIRD LLP**
Alex Yanos (admitted *pro hac vice*)
Joanna C. Hendon (admitted *pro hac vice*)
Apoorva J. Patel (Pa. Bar No. pending)
90 Park Avenue, 15th Floor
New York, NY 10016
(212) 210-9400
alex.yanos@alston.com
joanna.hendon@alston.com
apoorva.patel@alston.com
*Attorneys for Core Defendants*

Dated: February 11, 2026

57241290.1

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 11, 2026, I electronically filed the foregoing Motion to Compel Arbitration and Stay Proceedings and accompanying proposed Order and Brief with the Clerk of the Court for the United States District Court for the Eastern District of Pennsylvania by using the Court's CM/ECF system. Service was accomplished on all counsel of record via the Court's CM/ECF system.

*/s/ John F. Stoviak*
John F. Stoviak

Dated: February 11, 2026

57241290.1

**CERTIFICATE OF COMPLIANCE WITH MEET AND CONFER REQUIREMENT**

I hereby certify that on February 4, 2026, the parties did meet and confer in an attempt to resolve the present Motion to Compel Arbitration and Stay Proceedings. As this matter was unable to be resolved through substantive verbal communications, on February 5, 2026, the parties agreed to a stipulation regarding motion practice following the Amended Complaint (Dkt. #25), which the Court approved on February 6, 2026 (Dkt. #28).

*/s/ John F. Stoviak*
John F. Stoviak

Dated: February 11, 2026

- 2 -

57241290.1