# Exhibit F

**Exhibit B**

11/13/2020

ADDENDUM

General Terms and Conditions
Relating to Amazonas Tanker Pool Participation Agreements

December 1, 2020

123942312



**Exhibit B**

This Addendum - General Terms and Conditions Relating to Amazonas Tanker Pool Participation Agreements ("Addendum") is effective as of December 1, 2020 (the "Effective Date").

WHEREAS:

(1)     Empressa Publica Flota Petrolera Ecuatoriana ("EP FLOPEC"), Amazonas Tanker Pool Company LLC ("Pool Company") and other persons participating in the Pool as a "Participant" (each, a "Party" and collectively, the "Parties") have previously formed a pool of Vessels (the "Pool") which are and will continue to be chartered to Pool Company.

(2)     The Parties have agreed that the commercial management of the Vessels in the Pool shall be performed by Pool Manager under the respective vessel PPAs and the CMA.

(3)     This Addendum establishes certain terms of the Pool going forward from and after the Effective Date.

(4)     This Addendum shall be construed to supplement and, in certain instances, modify the terms of all PPAs to which any subject Party is a party, previously or hereafter entered into relating to the Pool.

NOW, THEREFORE, IT IS AGREED as follows:

## 1.     Definitions

### 1.1     Definition of Terms

The terms used in this Addendum, with their initial letters capitalized, shall unless the context thereof otherwise requires, have the following meanings specified in this Section:

a.     "Affiliate" shall mean, with respect to any Party, any person controlling, controlled by or under common control with, that Party.

b.     "CMA" shall mean a Commercial Management Agreement between Pool Company and Pool Manager, as same may be amended from time to time.

c.     "Evergreen" shall mean that, after the Initial Period, this Addendum shall remain in effect continuously for successive two-year periods until the effective date of termination after any Party provides notice to terminate this Addendum.

d.     "Fleet" shall mean the collective group of Vessels entered into the Amazonas Tanker Pool by the respective Pool Participants.

e.     "Fleet Balance Plan" shall mean a plan generated by the Pool Manager for purposes of maintaining Fleet size balance.

f.     "Fleet Imbalance" shall mean a period in time when a Participant's total Vessel contributions to the Pool are disproportionately larger than the contributions of the other Participants.

g.     "Initial Period" shall mean the compulsory two-year period from and after the Effective Date in which no Participant has the right to voluntarily terminate its participation in the Pool.

123942312

h.    "Participant" shall mean EP FLOPEC and any other person admitted to participate in the Pool pursuant to a PPA.

i.    "Pool" shall mean the Amazonas Tanker Pool created and/or continued by this Addendum and the respective PPAs.

j.    "Pool Company" shall mean Amazonas Tanker Pool Company LLC, registered in Marshall Islands, and/or its successors and assigns.

k.    "Pool Manager" shall mean Amazonas Tankers LLC, registered in Delaware, United States, and/or its successors and assigns.

l.    "Pool Portal" shall mean a website administered by Pool Manager for the purpose of disseminating pertinent Pool performance and financial information to the Participants

m.    "Pool Review" shall mean the review of a complaint notice from a Participant to Pool Manager with respect to the Pool earnings over the previous 24 months.

n.    "Pool Vessel" shall mean a Vessel which a Participant has contributed to the Pool.

o.    "PPA" shall mean any Pool Participation Agreement relating to any Vessel in the Pool previously or hereafter entered into.

p.    "Vessel" shall mean an Aframax size tanker vessel meeting the standards set forth in Attachment A hereto and otherwise reasonably acceptable to Pool Company and Pool Manager.

## 2.    Business of the Pool

2.1    The "Business of the Pool" shall comprise the operation of Vessels for world-wide transportation of crude oil, fuel oil and other petroleum products and all activities ancillary thereto. Pool Company shall not engage in any business other than the Business of the Pool.

## 3.    Headings

3.1    Section headings are inserted for convenience of reference only and should be ignored in interpretation of this Addendum.

## 4.    References

4.1    In this Addendum, unless the context otherwise requires:

a.    references to Sections and Attachments are to be construed as references to Sections of and Attachments to this Addendum and references to this Addendum include its Attachments;

b.    words importing the plural shall include the singular and vice versa;

c.    references to a person shall be construed as references to an individual, firm, company, corporation, unincorporated body of persons or any government entity; and

d.    references to any person includes such persons' assignees and successors in title.

123942312

**Exhibit B**

## 5.    Obligations

5.1    The Parties intend for at least 8 Vessels to be included in the Pool.  Due attention and consideration shall be provided to Parties recommendations as it relates to Fleet size.  However, the ultimate Fleet size shall be determined by Pool Manager in its sole discretion and promulgated to Participants by Pool Manager in due course.

5.2    Participants shall submit any proposed Vessel contributions to Pool Manager for review and approval to determine acceptability in the Pool. Pool Manager may reject any Vessels submitted for approval in its sole discretion. However, if the rejection is due to a Pool vetting requirement, the Pool Manager may provide a written list of deficiencies and/or requirements for the Participant to rectify by a stated deadline in order for the submitted Vessel to be re-considered for approval; likewise, Pool Manager may in its sole discretion terminate Vessels in the Pool for reasons such as age or other Vessel operational concerns.  Such age or operational concern terminations shall be notified to the affected Participant by Pool Manager within 30 days of the effective termination date.  If the affected Participant does not attend or resolve the age or operational concerns to the satisfaction of the Pool Manager within the 30 day notice period, the affected Vessel shall be terminated and the Participant will have the option to nominate a replacement vessel for Pool Manager approval in order to keep the fleet size proportional among the Participants.  Further, notwithstanding the terms of any PPA, Pool Manager may, in its sole discretion, establish and implement reasonable increases or other modifications to the minimum standards for Vessels to meet changing trade and customer requirements which are considered to be in the interest of optimizing the returns to Participants in the Pool.  The Pool Manager shall promulgate the modifications to the minimum standards for the Pool to all Parties within 90 days of the effective date of the change.  Each Participant shall comply with such modifications or in the alternative may terminate its participation in the Pool per the termination provisions in any applicable PPA and this Addendum.

5.3    In accordance with subsection 5.4 below and the practicalities of Vessel delivery, re-delivery and operations, the Parties agree that EP FLOPEC may contribute up to its proportionate share of the total Vessels in the Pool relative to other Participants.

5.4    A Fleet Imbalance shall exist when any one Participant's total Pool Vessel contributions exceed its disproportionate share of the total Fleet size or when Pool Manager determines the size of the Fleet is not appropriate for current market conditions. Upon a Fleet Imbalance, Pool Manager and Pool Company may, but shall not be obligated to cause the following to occur:

(1)    A Participant with a higher percentage of Pool Vessel contributions shall immediately pause future Pool Vessel contributions until authorized by Pool Manager.

(2)    Pool Manager shall submit a Fleet Balance Plan to the Parties in order to bring each Participant's Vessel contributions to the Pool to a level reasonably proportionate to the total number of Participants. This Fleet Balance Plan shall be binding upon the Parties.

5.5    The Parties shall share market information, proprietary analysis and information systems with Pool Manager on a private and confidential basis.

5.6    The senior management of the Parties and Pool Manager intend to meet on a quarterly basis to discuss best practices, commercial strategy, and opportunities.

5.7    Pool Company reserves the right to terminate the participation of any Participant in the Pool in the event of the Participant's breach of this Addendum or a PPA, or in the event of the bankruptcy, insolvency or reorganization of a Participant.

123942312

5.8     In respect of any contract of affreightment ("COA"), time or voyage charter that Pool Company enters into or has an opportunity to enter into as disponent owner or any COA, time or voyage charter in which the original owner or disponent owner has assigned its rights and benefits to Pool Company, the Parties agree that Pool Company has the right to enter into time charters as charterers with third party owners or disponent owners ("Third Party Charters"), for the purpose of chartering-in vessels from such third party owners or disponent owners ("Third Party Vessels") as needed to cover time or voyage, charter trip commitments and COA's. All Third Party Charters shall be in accordance with any Classification Society rules and any requirements of the insurance coverage for the Vessel and under the **Shelltime 4 charter form** attached as Appendix 1. All net income associated with Pool Company chartering-in is to be allocated to the net Pool revenues and such transactions will be referred to as "Pool trading transactions."

## 6.     Pool Portal

6.1   Pool Company shall appoint Pool Manager to administer a web-based Pool Portal that shall provide the Parties with details of all Pool Vessels' earnings, charters, voyages, and Pool cash flow. The Pool Portal shall be updated regularly and accessible 24 hours a day. No less than one Participant Representative will have access to the Pool Portal with login information provided in due time by the Pool Manager. The Parties shall treat all information related to the Pool and Pool Portal as private and confidential and shall not share information with any third party unless expressly authorized by each of the other Parties.

## 7.     Commencement

7.1     This Addendum shall be effective from and after the Effective Date.

## 8.     Termination

8.1     Except as otherwise restricted by Pool Company or Pool Manager (but in any event notwithstanding the terms of any PPA), each Participant agrees to maintain a minimum of 3 Vessels in the Pool for the Initial Period, thereafter, this Addendum (and the foregoing minimum Vessel commitment) shall continue on an Evergreen basis. Any Party may terminate its participation in the Pool during the Evergreen period by providing six months notice prior to the last day of the two-year Evergreen period that the Parties are then within. Following that, the Participants may withdraw their Vessels per their individual PPAs.

8.2     During the Evergreen period, if the monthly Pool net result (TCE) is less than the weighted average hire rate for any Participant's Pool Vessels for 24 consecutive months, then that Participant may request a Pool Review wherein the Participant's complaint will be reviewed over a 60-day period. If, at the sole discretion of Pool Manager, after the 60-day period, it is determined that the Participant's complaint is valid, then the Participant may thereon withdraw its Vessels from the Pool as per the Termination/Withdrawal clause of its individual Vessel PPA.

## 9.     Non-Compete

9.1     No Pool Vessel shall be employed in any business other than the Business of the Pool without the prior written consent of all the Parties.

9.2     Each Participant hereby agrees that, without the prior written consent of Pool Company, during the term of this Addendum (including any Evergreen period), neither the subject Participant, nor any of its Affiliates shall, directly or indirectly (including in conjunction with or through any other person), carry on any activities or business which uses Aframax size vessels of the Pool Business.

123942312

**Exhibit B**

9.3     If during the term of this Addendum (including any Evergreen period) EP FLOPEC is asked to provide any vessel for a cargo to which a Cargo Reserve applies, it shall give preference to the use of a Pool Vessel, paying market rates for the use of a Pool Vessel.

9.4     Each Participant agrees that during the term of this Addendum (including any Evergreen period) it shall not, whether by itself, its employees or agents or otherwise howsoever, directly or indirectly, do or permit anything to be done which is harmful to the reputation of Pool Company or Pool Manager or which is likely to cause any person to reduce the amount of business transacted between that person and the Pool or seek to change the terms of such business in a manner adverse to Pool Company.

## 10.     Confidentiality

10.1     This Addendum, including all terms, details, conditions, and period shall be kept private and confidential by each of the Parties and beyond the reach of any third person. The terms and conditions of this Addendum are for the sole use of the Parties and are not to be copied or used for any other purpose without the express written consent of each other Party.

10.2     Subject to Section 10.3, each Party shall (and shall ensure that its employees, agents and advisers shall) safeguard, treat as confidential and not use for any purposes any confidential information it acquires in connection with this Addendum or which relates to the Pool or to any of the other Parties except:

a.     as may be required by law or by any relevant national or supernational regulatory authority or by the rules of any relevant recognized stock exchange;

b.     where it has come into the public domain otherwise than through breach of this Addendum;

c.     disclosure of details of the Pool's affairs, finances and accounts to a Party's professional and financial advisers who are required to know the same to carry out their duties;

d.     disclosure on a "need to know" basis to a person which is an Affiliate of any Party where such disclosure is for a purpose reasonably incidental to this Addendum; or

e.     information which is independently developed by a Party or acquired from a third party to the extent it is acquired with the right to disclose the same.

10.3     The obligations of confidentiality in this Section 10 shall survive the termination of this Addendum but shall cease to apply to any confidential information which enters the public domain through no fault of a subject Party, whether before or after termination.

10.4     Upon termination of the Pool, each Party may demand from the others the return of its confidential information by notice in writing whereupon the other Parties shall (and shall ensure that their respective officers and employees shall):

a.     return all documents containing confidential information which have been provided by or on behalf of the Party demanding return of such information; and

b.     destroy all copies of such documents and any document or other record reproducing, containing or made from or with reference to the confidential information, including without limitation any of the foregoing held electronically (save, in each case, for any submission to or filings with governmental, tax or regulatory authorities). Such return or destruction shall take place as soon as practicable after the receipt of the said notice.

## 11.     Admission of New Pool Members

11.1     Pool Manager shall have the right to propose and negotiate on behalf of the Parties the

123942312

submission of new Pool Participants, including any amendment to this Addendum. However, no person shall be entitled to become or be regarded as a Participant in the Pool without the prior written authorization of all Parties.

## 12.    EP FLOPEC / Cargo Reserve

12.1    With respect to cargoes in which the Ecuadorian Cargo Reserve Law ("Ecuadorian Cargo Reserve Law" or "Cargo Reserve Law" shall mean LEY DE FACILITACION DE LAS EXPORTACIONES Y DEL TRANSPORTE ACUATICO. Ley No. 147.RO/901 de 25 Marzo de 1992) applies, as it relates to the commercial chain, EP FLOPEC will be the charterer from Pool Company and disponent owner to the end user, paying market rates to Pool Company.

12.2    The Parties shall work cooperatively to enable EP FLOPEC to charter Pool Vessels from Pool Company to cover all shipper/charterer cargoes loading in Ecuador. The Parties shall give priority to any Pool Vessel(s) over all other vessels for transportation of any Ecuadorian hydrocarbons.

12.3    When EP FLOPEC acts as a charterer or disponent owner using any Pool Vessels to cover any third person shipper/charterer cargoes loading in Ecuador, any claims presented to EP FLOPEC by the Pool shall be presented to the subject third person without any material amendments and shall be prosecuted by EP FLOPEC using best efforts. EP FLOPEC shall act as disponent owner between the Pool and the third person, and all funds received by EP FLOPEC from the third person relating to the claim shall be immediately turned over to the Pool without deduction or offset (less any express commissions or rebates). EP FLOPEC shall provide timely correspondence and supporting documentation requested by the Pool relating to any such claims.

## 13.    Insurances

13.1    Unless the same are determined by Pool Company or Pool Manager to be in place (following consultation with the Participants), Pool Company or Pool Manager shall be entitled, but not obliged, to effect such of the following insurances and/or such other insurances as Pool Company or Pool Manager may determine to be required for the efficient and safe operation of the Pool:

   a.    Pool/Ship Managers' Legal Liability Insurance;

   b.    Loss of Hire and/or Freight Insurance;

   c.    Charterers' Liability Insurance; and

   d.    Charterers' F.D. & D. Coverage.

## 14.    Assignment

14.1    The Parties may not assign or transfer any of their rights or obligations under this Addendum without the prior written consent of the other Parties; provided that a Party may transfer all its rights and obligations hereunder to an Affiliate of that Party.

## 15.    Governing Law/Arbitration

15.1    Notwithstanding the terms of any PPA, this Addendum and all PPAs shall be governed by the laws of the State of New York. If any dispute should arise in connection with the interpretation and fulfillment of this Addendum or any PPA, such dispute shall be decided by arbitration in New York subject to the rules of the Society of Maritime Arbitrators. If the Parties cannot agree upon the appointment of a

123942312

single arbitrator, the dispute shall be settled by three arbitrators, each Party appointing one Arbitrator, and if the dispute is between two Parties, the third arbitrator shall be appointed by the arbitrators named by each Party. If any of the appointed arbitrators refuses or is incapable of acting, the Party appointing him shall appoint a new arbitrator in his place. Any determination rendered by the arbitrator(s) shall be final and binding upon the Parties and may, if necessary, be enforced by a court of any competent authority in the same manner as a judgment in a court of law.

### 16.    No Partnership

16.1    Notwithstanding the terms of this Addendum or any PPA, nothing in this Addendum or any PPA shall create a partnership or establish a relationship of principal and agent or any other fiduciary relationship between or among any of the Parties.

### 17.    Miscellaneous

17.1    The Sections of this Addendum shall be deemed to give rise to separate and independent rights and obligations of the Parties hereto; to the extent that any Section (or part thereof) of this Addendum is subsequently found to be invalid or unenforceable the same shall not affect any other part of this Addendum, which shall remain in full force and effect.  In such event the Parties shall negotiate in good faith to agree upon altered terms of this Addendum to replace those which have been found to be invalid or unenforceable.

17.2    No term of this Addendum is enforceable by a person who is not a Party.

17.3    The Parties agree that monetary damages may not provide adequate relief and compensation in the event of a breach of this Addendum or any PPA by a Party, and that, therefore, this Addendum and any PPA may be enforced by equitable remedies including injunctive relief (without the necessity of any bond).

17.4    Except as otherwise expressly provided in this Addendum, in the event of any conflict between the terms of this Addendum and the terms of any PPA, the terms of this Addendum shall control as between Pool Company and the subject Participant as to the subject Vessel(s), and the terms of any subject PPA shall be deemed amended accordingly.

### 18.    Notices

18.1 Notices or other communications under or with respect to this Addendum or any PPA shall be in writing and shall be delivered personally or shall be sent by mail, telefax, or email to the parties at their respective addresses set forth below or to such other address as to which notice is given:

EP FLOPEC:
EMPRESA PUBLICA FLOTA PETROLERA ECUATORIANA
Avenida Del Pacifico No. 001 y Puerto Rico
Esmeraldas, Ecuador
Apt. 080106
Email: jcondov@flopec.com.ec

Pool Company:
AMAZONAS TANKER POOL COMPANY LLC
1400 Liberty Ridge Drive, Suite 100
Wayne, PA  19087
Email:  operaciones@amazonastankers.com

Notice shall be deemed given upon sending except for notice by mail shall be deemed given upon receipt.



123942312

**Exhibit B**

IN WITNESS WHEREOF, this Addendum has been duly executed by each of the parties as of the date first set forth above.

**EMPRESSA PUBLICA FLOTA PETROLERA ECUATORIANA**

By:

Name:   JAIME CONDOY

**AMAZONAS TANKER POOL COMPANY LLC**

By:

Name:   JOHN DAMIANI

123942312

**Exhibit B**

Attachment A

MINIMUM POOL ACCEPTABILITY REQUIREMENTS TO INCLUDE BUT NOT LIMITED TO:

1) SOTE / OCP TERMINAL ACCEPTABILITY
2) PANAMA CANAL SUITABLE
3) MUST BE LESS THAN 15 YEARS OLD DURING THE TIME THE VESSEL IS IN THE POOL

123942312

**Exhibit B**

Attachment B

To be provided.

123942312