# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| FLOTA PETROLERA ECUATORIANA EP, <br><br> *Plaintiff,* <br><br> v. <br><br> WILLIAM S. SUDHAUS, DAVID W. SUDHAUS, ENRIQUE CADENA-MARIN, JAIME CONDOY-BLACIO, DRAGUN USA LLLP, MJØLNER AFR'AMAX POOL CO LLC, MJØLNER SOLUTIONS CHARTERING LLC, MJØLNER SHIP MANAGEMENT LLC, AMAZONAS CA, LLC, AMAZONAS TANKERS, LLC, CORE TRANSPORT, LLC, AND JOHN AND JANE DOES 1-10, <br><br> *Defendants.* | No. 2:26-cv-00124-GAW |

## MEMORANDUM

Presently before this Court is the Motion to Compel Arbitration and Stay Proceedings (Dkt. 31) (Motion) filed by Defendants William S. Sudhaus, David W. Sudhaus, Dragun USA LLLP, Amazonas CA LLC (f/k/a Amazonas Tanker Pool Company LLC and Mjølner Aframax Pool Co. LLC), Amazonas Tankers LLC (f/k/a Mjølner Ship Management LLC), and Core Transport LLC (collectively, "Core Defendants").

By way of background, Flota Petrolera Ecuatoriana EP (FLOPEC) is an "Ecuadorian state-owned company responsible for maritime transportation of hydrocarbons …[,] (i) exporting crude oil produced in Ecuador … and (ii) importing into Ecuador refined products such as gasoline and diesel." Amended Complaint at

¶ 32 (Dkt. 19). Because FLOPEC "does not own a large fleet of vessels," it rents "most vessels from third parties to transport its oil." *Id.* at ¶ 33. This matter arises out of those contractual relationships with Core Defendants. In its Amended Complaint, FLOPEC alleges various counts of tortious interference with business relations, breach of fiduciary duty, aiding and abetting breach of fiduciary duty, failing to provide a full and complete accounting of the arrangement, unjust enrichment, civil conspiracy, and violations of Ecuadorian law. *See id.* at ¶¶ 82–134. FLOPEC further seeks a declaratory judgment that the claims are not subject to arbitration. *See id.* at ¶¶ 135–146.[1]

In their Motion to Compel Arbitration, Core Defendants argue that FLOPEC's claims must "be resolved through arbitration because they concern disputes that 'arise in connection with the interpretation and fulfillment of'" the contracts between FLOPEC, Amazonas, AZ Tankers, and Core Transport. Motion at 8. This Court agrees.

There is a "liberal federal policy favoring arbitration[.]" *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (citation omitted). Under the Federal Arbitration Act[2] (the FAA), "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration[.]" *Moses H. Cone Mem'l Hosp. v. Mercury*

---

[1] FLOPEC initially filed suit in the Court of Common Pleas of Chester County, Pennsylvania, where FLOPEC asserts Core Defendants "regularly conduct business" or that "the causes of action arose out of transactions or occurrences which took place in whole or part in Chester County, Pennsylvania." Amended Complaint at ¶ 31. Core Defendants removed the matter to federal court pursuant to the Federal Arbitration Act. Notice of Removal at ¶ 1 (citing 9 U.S.C. § 205) (Dkt. 1). The propriety of removal is not at issue here.

[2] 9 U.S.C. § 1 *et seq.*

*Constr. Corp.*, 460 U.S. 1, 24–25 (1983).  This "emphatic federal policy in favor of arbitral dispute resolution … applies with special force in the field of international commerce."  *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631 (1985).

As the parties note, this matter is subject to two international conventions: the Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958 (the New York Convention) and the Inter-American Convention on International Commercial Arbitration of January 30, 1975 (the Panama Convention).  Both are incorporated by the FAA.  *See* 9 U.S.C. §§ 201, 301. Relevant here, the New York Convention directs courts to enforce valid arbitration agreements unless they are null and void, inoperative, or incapable of being performed:

> The court of a Contracting State, when seized of an action in a matter in respect of which the parties have made an arbitration agreement within the meaning of this article, shall, at the request of one of the parties, refer the parties to arbitration unless it finds that the said agreement is null and void, inoperative, or incapable of being performed.

21 U.S.T. 2517, Art. II(3).

Further, under the FAA, when confronted with "any issue referable to arbitration under an agreement in writing for such arbitration," a court, "upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement," must "stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement[.]"  9 U.S.C. § 3; *see also Miron v. BDO Seidman, LLP*, 342 F. Supp. 2d 324, 328 (E.D. Pa. 2004)

("Under the Federal Arbitration Act … a district court must compel arbitration if it finds (1) that a valid arbitration agreement exists between the parties, and (2) that the dispute before it falls within the scope of this agreement.").

Here, the contracts contain arbitration agreements. *See* Amended Complaint, Exhibit A at 31, 43, 64, 128 (Dkt. 19-1) (containing provisions specifying that "[i]f any dispute should arise in connection with the interpretation and fulfillment of" the agreements, the matter shall be decided by arbitration). All of the counts in FLOPEC's Amended Complaint fall within the scope of these arbitration agreements because they all concern disputes arising out of the relationship established by these agreements. As Core Defendants observe, "the very existence of these contracts is the factual predicate to each of FLOPEC's claims." Motion at 14. Even if the relationship between the parties predated these contracts, FLOPEC subsequently chose to enter into the contracts, which contained the governing arbitration agreements. Therefore, arbitration is proper.

FLOPEC raises several counterarguments to this somewhat straightforward conclusion. First, it argues that the arbitration agreements are not valid. *See* Memorandum in Opposition to Defendants' Motion at 1 (Dkt. 35). FLOPEC avers that Ecuadorian law requires international arbitration agreements receive prior written approval from Ecuador's attorney general. *See id.* at 10-11 (citations omitted). Because that did not happen here, FLOPEC argues, the agreements are invalid. Additionally, FLOPEC maintains its own "officials who signed the four agreements at issue did not have the capacity to enter into the arbitration

provisions contained therein[.]"  *Id.* at 12.

Conversely, as FLOPEC explains, Core Defendants argue "the arbitration contracts' New York choice-of-law clauses require application of New York law to determine the validity of the arbitration provisions."  *Id.* at 12 n.6 (citation omitted). "Not so[,]" FLOPEC responds, insisting that the "Third Circuit has firmly established that [ ] 'the ultimate arbitrability of a contract is a matter of federal substantive law' under the [FAA.]"  *Id.* (citing *Sharon Steel Corp. v. Jewell Coal & Coke Co.*, 735 F.2d 775, 778 n.6 (3d Cir. 1984)).

Preliminarily, FLOPEC is incorrect about the law governing the validity of arbitration clauses.  A review of the authority in FLOPEC's Memorandum reveals the problem.  *Sharon Steel*, cited by FLOPEC, in turn cites *Becker Autoradio U.S.A., Inc. v. Becker Autoradiowerk GmbH*, 585 F.2d 39, 43 (3d Cir. 1978), for the proposition that validity is a question of federal substantive law.  However, in 2019, the Third Circuit revisited this issue.  The Court first explained that "[e]arly on, [the Third Circuit] held that 'whether a particular dispute is within the class of those disputes governed by the arbitration and choice of law clause is a matter of federal law.'"  *In re Remicade (Direct Purchaser) Antitrust Litig.*, 938 F.3d 515, 520 (3d Cir. 2019) (citing *Becker*, 585 F.2d at 43).  Yet the Third Circuit then observed that "the Supreme Court disagreed, holding in *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938 (1995), that '[w]hen deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally … should apply ordinary state-law principles that govern the formation of contracts.'"  *Id.* (citing

5

*First Options*, 514 U.S. at 944).

Here, each of the four contracts has a choice of law clause selecting New York law to govern the agreement. *See* Amended Complaint, Exhibit A at 31, 43, 64, 128. Accordingly, New York law applies to the question of the arbitration clauses' validity, and FLOPEC has not convincingly explained why the clauses would be invalid under New York law.

Moreover, an "arbitration provision is severable from the remainder of the contract." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445 (2006). "[U]nless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance." *Id.* at 445–46. Although FLOPEC styles its challenge as being "directed specifically at the arbitration clauses, not at the contracts as a whole[,]" Memorandum in Opposition at 2 (footnote omitted), it is clear from FLOPEC's argument that its challenge is in fact to the whole of the contracts. Because this Court determines that FLOPEC has not shown the arbitration clauses are invalid under the applicable law, any remaining challenges to the contracts should be decided in arbitration.

Next, FLOPEC asserts the "the arbitration clauses are 'null and void' under the New York Convention and unenforceable as a matter of U.S. public policy." Memorandum in Opposition at 2. FLOPEC "alleges that the contracts containing the arbitration clauses were themselves the product and instrument of a corrupt scheme to divert Ecuador's oil shipping revenues." *Id.* at 17. FLOPEC further stresses that the "United States' public policy strongly opposes international

corruption" and "recognizes the importance of international comity—respect for the constitutional and legal frameworks of foreign sovereigns." *Id.* (citations omitted).

FLOPEC's conclusory allegations are not enough to overcome two other public policy considerations. First, as discussed above, there is the federal policy favoring the enforcement of arbitration clauses, especially when they pertain to international commerce. Second, there is the policy behind the New York Convention itself. The Supreme Court has explained that the "goal of the Convention, and the principal purpose underlying American adoption and implementation of it, was to encourage the recognition and enforcement of commercial arbitration agreements in international contracts and to unify the standards by which agreements to arbitrate are observed and arbitral awards are enforced in the signatory countries." *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 520 n.15 (1974). Thus, the "signatory nations have effectively declared a joint policy that presumes the enforceability of agreements to arbitrate. Neither the parochial interests of the forum state, nor those of states having more significant relationships with the dispute, should be permitted to supersede that presumption." *Rhone Mediterranee Compagnia Francese di Assicurazioni e Riassicurazoni v. Lauro*, 712 F.2d 50, 54 (3d Cir. 1983). This means the "policy of the Convention is best served by an approach which leads to upholding agreements to arbitrate." *Id.*

Given the policy of the New York Convention, the Third Circuit has persuasively explained the "'null and void' language must be read narrowly, for the signatory nations have jointly declared a general policy of enforceability of

7

agreements to arbitrate." *Id.* at 53. Therefore, an agreement to arbitrate should only be deemed "null and void" under the New York Convention "(1) when it is subject to an internationally recognized defense such as duress, mistake, fraud, or waiver, or (2) when it contravenes fundamental policies of the forum state." *Id.* (citations omitted). Here, the agreements are not subject to any such defenses, and giving them effect furthers the forum jurisdiction's policy of favoring arbitration agreements. Therefore, FLOPEC's argument is unavailing.

Next, FLOPEC insists that, even if the arbitration clauses were valid, this dispute would fall outside their scope because "FLOPEC brings no contract claims; it alleges torts and statutory violations of Ecuadorian law arising from a fraudulent scheme that began years before the contracts were executed." Memorandum in Opposition at 2–3. In FLOPEC's view, this dispute does not concern the interpretation or fulfillment of any of the contracts because none of FLOPEC's claims require the interpretation or fulfillment of any contract provision. *See id.* at 19. Instead, FLOPEC emphasizes a "corrupt scheme to seize control of FLOPEC's business, beginning in 2018—two years before the first contract containing an arbitration clause[,]" pointing to alleged bribery, bad-faith business decisions designed to capture FLOPEC's revenue, "concealment of the scheme through opaque corporate structures[,]" and violations of Ecuadorian law. *Id.* (citations omitted). FLOPEC characterized the contracts as "at most, evidence of the broader scheme—not the basis for FLOPEC's claims." *Id.* at 20.

Arbitration clauses are to be interpreted broadly. *See AT & T Techs., Inc. v.*

8

*Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986) ("[W]here the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." (cleaned up)).   Put succinctly, "[d]oubts should be resolved in favor of coverage."  *Id.*  Indeed, the Supreme Court has "repeatedly held that ambiguities about the scope of an arbitration agreement must be resolved in favor of arbitration." *Lamps Plus, Inc. v. Varela*, 587 U.S. 176, 189 (2019) (citations omitted).

When considering the nature of a claim, "a court looks not to the labels or legal theories attached to the claims … but rather it must focus on the factual underpinnings of the claim." *Medversant Techs., LLC v. Leverage Health Sols., LLC*, 114 F. Supp. 3d 290, 297 (E.D. Pa. 2015) (cleaned up).  Here, as Core Defendants explain in their Motion, each of the counts against Core Defendants arises in connection with the interpretation and fulfillment of the contracts.  *See* Motion at 15–18.  The language of the arbitration agreements is therefore broad enough to encompass these claims, especially when considered against the clear federal policy favoring the enforceability of arbitration agreements.

Next, FLOPEC contends that Core Defendants cannot compel arbitration because "seven of the eight [Core] Defendants are not parties to any contract with FLOPEC[.]"  Memorandum in Opposition at 3.  FLOPEC stresses that "[o]nly Amazonas CA LLC is a signatory to the four agreements containing arbitration

9

clauses. The remaining Moving Defendants—including William Sudhaus, David Sudhaus, Dragun USA LLP, Amazonas Tankers LLC, and the renamed Mjølner entities— are complete strangers to the contracts." *Id.* at 21.

Under New York law's "principles of estoppel, a signatory to an arbitration agreement will be estopped from avoiding arbitration with a non-signatory when the issues the non-signatory is seeking to resolve in arbitration are intertwined with the agreement that the [e]stopped party has signed." *Chung Chang v. Warner Bros. Ent.*, No. 19 CIV. 2091 (LAP), 2019 WL 5304144, at *4 (S.D.N.Y. Oct. 21, 2019) (citation and quotation marks omitted). A "non-signatory to an arbitration agreement may compel a signatory to that agreement to arbitrate a dispute[.]" *JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 177 (2d Cir. 2004). First, however, a "a careful review of the relationship among the parties, the contracts they signed …, and the issues that had arisen among them" must disclose that "the issues the non[-]signatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed." *Id.* (citation and quotation marks omitted).

All Core Defendants in this action were involved in the tanker pools subject to the contracts at issue here. They are named together, and FLOPEC alleges that "[Core] Defendants, together with their co-conspirators, orchestrated a years-long scheme to seize control of FLOPEC's statutory shipping mandate, divert at least $650 million in revenues to entities they controlled, and shield their misconduct through opaque corporate structures and the corruption of Ecuadorian officials." Memorandum in Opposition at 1 (citation omitted). Thus, FLOPEC's own

10

characterization of the factual background here repeatedly maintains that Core Defendants are intertwined.

Further, this Court is persuaded that an "arbitration agreement would be of little value if a party could obviate the effect of the agreement merely by finding a way to join another party." *Dodds v. Pulte Home Corp.*, 909 A.2d 348, 352 (Pa. Super. 2006). Consequently, this argument fails to render the arbitration clauses unenforceable.

Finally, FLOPEC maintains that "none of the [Core] Defendants have stipulated to the arbitration tribunal's jurisdiction to hear FLOPEC's claims in the event this Court compels arbitration." Memorandum in Opposition at 3. Accordingly, FLOPEC alleges the Core Defendants "intend to deprive FLOPEC of any forum, thereby completely escaping accountability for their fraudulent and corrupt misconduct." *Id.*

This argument is unconvincing. If there are valid arbitration agreements, compelling arbitration is merely ensuring that the parties resolve their disputes in their chosen forum. Moreover, the action before this Court will merely be stayed, and FLOPEC will remain free to seek judicial recourse if it is unsatisfied with the result of arbitration. *See Jules v. Andre Balazs Props.*, 608 U.S. ___, ___ (2026) (slip op. at 7) ("[A] court with the power to stay the action under § 3 [of the FAA] has the further power to confirm [or vacate] any ensuing arbitration award." (citing *Cortez Byrd Chips, Inc. v. Bill Harbert Const. Co.*, 529 U.S. 193, 202 (2000)) (first and third alterations in original)).

In sum, Core Defendants are entitled to their bargained-for method of dispute resolution: arbitration.   Accordingly, their Motion is granted.   An appropriate order follows.

DATED: May 27, 2026

BY THE COURT:

_____
GAIL WEILHEIMER        J.